José González Lueso, Petitioner and Appellant, *v.* Municipal Court of Ciales, Hon. Luis Martorell, Judge, Respondent and Appellee; and Epifanio Rodríguez Santiago, Intervenor, and Plaintiff in the main action.

No. 7425.   Argued March 10, 1938.—Decided December 22, 1938.

*V. Polanco de Jesús* for appellant.   *Angel Rivera Colón* for intervenor.

Mr. Justice Wolf delivered the opinion of the Court.

Epifanio Rodríguez mortgaged his undivided one-half interest in a farm, approximately of 40 acres, to José González Lueso to secure a loan of $1,256.72.   The right of homestead was expressly reserved and Rodríguez was living on the farm at the time of the contract.   The creditor foreclosed, and after the debtor's interest had been adjudicated to him, the debtor filed a suit in the proper municipal court to recover his homestead right.   Rodríguez had never abandoned possession of the property.   The creditor was given the option of paying $500 over to Rodríguez or of setting aside and transferring to him the title to the house and enough land to make up that amount.   He failed to comply with either

alternative and so the plaintiff-debtor sought to have the judgment executed.

After the foreclosure, but before the suit to recover the homestead, the creditor and the other holders in common privately agreed upon a division of the community whereby the interest in litigation was fixed at 15 *cuerdas* and a house. The Municipal Court ordered the execution of the judgment against those 15 *cuerdas* and González Lueso in the District Court of Arecibo sought by certiorari to review the order. The present appeal was taken from the decisions of the District Court denying the writ and refusing to reconsider such denial.

Although five errors were assigned, only two real questions need be considered. The first of these relates to the possibility of establishing and claiming a homestead right in an undivided interest in real property. In the case of *López Rudón* v. *López*, 48 P.R.R. —— we decided that the widow of the holder of an undivided interest in community property could defend herself successfully from an unlawful detainer suit brought by her husband's judgment creditor, on the ground that she had succeeded to her husband's homestead right in such property. We see no reason to depart from such a view.

The other point involved is whether the procedure followed by the municipal court was correct. We shall assume, inasmuch as no question of fact has been raised, that the appellee lives on the portion of land adjudicated to the appellant when the latter divided or attempted to divide the community with the other co-owners.

The homestead right has been variously characterized as an encumbrance upon land, an estate in land, a quasi-estate, and as a right to the use and occupancy of a home. The determination of its true nature is elusive but a fundamental principle has been definitely established to the effect that legislation establishing a homestead right is intended to protect and conserve homes already in existence at the time

of the forced sales or execution and not to provide homes for poor. It is protective rather than remedial.

There are several cases of this court where the nature of the homestead right has been discussed. Section 1 of the Homestead Act of March 12, 1903, which is the Act applicable to the instant case, (Revised Statutes 1911, sec. 1000), provided:

"That every householder, having a family, shall be entitled to an estate of homestead to the extent and value of five hundred dollars in a farm, plantation or lot of land, and buildings thereon, owned, or lawfully possessed, by lease or otherwise and occupied by him or her, as a residence, and such homestead and all right and title therein, shall be exempt from attachment, judgment, levy or execution, except for the taxes due thereon, or purchase price of said property, or liability incurred for the improvements placed thereon, and except as hereinafter prescribed; *Provided* That in the case of a lease or other similar contract nothing herein contained shall be construed to prohibit the landlord or owner of the said farm, plantation or lot of land and the buildings thereon from reentering the said premises in accordance with the terms of the said lease and contract upon a breach of the conditions thereof."

Although many arguments can be presented in favor of taking any one of the above theories of the "homestead right," it seems quite clear that in this jurisdiction, at least, such a right has been classified not indefinitely as an "estate" but as an estate in property. In the case of *Federal Land Bank* v. *Municipal Court,* 47 P.R.R. ——, the late Justice Córdova Dávila said:

"The purpose of homestead legislation is achieved by rendering effective the exemption and by limiting the *jus disponendi* by sale or will. To that respect Waples says:

" 'It is property—not merely a privilege respecting it, or an indispensable right in it, or a quasi-estate not proprietary or transferable—which the law exempts. It is property which, in the absence of exemption, would be liable to execution. Personal rights and privileges not disposable would not be liable to execution under any circumstances. They would be lost by the execution of that on which they rest, if not reversed; and, under some circumstances,

they have been reserved in sales of homesteads. They are benefits inseparably connected with the homestead, but they do not constitute it.'

\* \* \* \* \* \* \*

''The homestead transfers no property or title whatsoever, and its constitution has not the effect of changing the status of the owner as to the property. The law limits its effects to grant the householder the right to continue in the use and enjoyment of his home and to tell the creditors to lay off their hands from it. In our judgment that is enough. The right of the householder to continue in the possession of that which belongs to him but which would no longer be his were it not for the protection of the law, is cast directly on the property and is so united to it that the homestead would not exist if separated from the property title.

\* \* \* \* \* \* \*

''. . . In the case of *Browning* v. *Harris,* supra, the Supreme Court of Illinois in construing the law of 1873 which, by the way has suffered some amendments, expresses itself as follows:

'' 'The right of homestead having been, by the amendatory act of 1873, enlarged into an *estate* it follows that, like all other estates it can have no separate existence independent of the title which constitutes one of its essential elements. Every owner of a homestead, under the present law, has an estate in the premises, either in fee for life or years, to the extent of $1,000. Where the head of the family, having an estate in fee in the homestead premises, dies, and the right of homestead devolves upon the surviving husband or wife by operation of law, a life estate is carved out of the fee for the purposes of such estate of homestead, and the heirs take a reversation in fee, only, expectant upon the termination of such life estate. In like manner, where the homestead in cast upon the children of the family, an estate for years is, by operation of law, carved out of the fee for the purposes of such estate of homestead in the children.'

''The provisions of the law of Illinois and those of the law of Puerto Rico are similar in this respect, with the difference that there the right acquired by the widower or widow when the homestead is cast upon them is called *estate for life* and here we call it usufruct of the surviving spouse. The same thing happens with the minors. There it is called *estate for years* and here it might be called temporary usufruct, inasmuch as it lasts until the children become of age.

"In the case of *Fritts* v. *Fritts,* 131 N. E. 584, decided by the Supreme Court of Illinois, it is said by said court construing the same law that:

" 'It is the rule in this state that a homestead is more than a mere right of occupancy exempt from levy and sale for debts. Where land occupied as a homestead does not exceed $1,000 in value no valid lien can be secured on such land or sale had thereof during the existence of such homestead estate, even though it is sought to sell such property subject to the homestead right. The land embraced in the homestead cannot be sold to pay the debts of the owner of the fee during the life of his widow and the minority of his children.'

"The provisions mentioned and commented upon by the court of Illinois appear in section four of our homestead law, which today is section 554 of our Civil Code, edition of 1930. According to this section no sale shall be made, under a judgment or execution of any farm, plantation or lot of land and dwellings thereon, when the same is claimed or occupied as a homestead, unless a greater sum than five hundred dollars is obtained therefor. Our law, as that of illinois, absolutely forbids the sale of any property when its value does not exceed $500 or when a sum greater than that can not be obtained."

We are of the opinion that under the doctrine of *Federal Land Bank* v. *Municipal Court, supra,* the debtor whose homestead property has been subjected to the payment of his debts, has an affirmative right to get $500 or have a piece of property of that value set aside to him, always under the assumption for the latter alternative that his property is worth more than $500. In any event, the creditor is entitled to return the debtor's original property to him in full satisfaction of the homestead claim, whether it be worth $500 or not.

The debtor is entitled to one of the following remedies:

I. If the land is worth less than $500, he has a right to keep the land or receive $500 from the creditor.

II. If the land is worth more than $500 he has a right either to:

(*a*) receive $500, **or**

(*b*) be awarded a piece of the original property worth $500.

It is the property which is exempt from sale not the right of Homestead. Of course, once the property loses its homestead character it becomes immediately subject to the payment of the debts of the homesteader.

The decisions of the District Court of Arecibo of September 1 and September 23, 1936, should be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice De Jesús took no part in the decision of this case.